**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09-CR-332 (-03) |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| HECTOR URIARTE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of Hector Uriarte (hereinafter "Hector," to distinguish Hector from his brother Jorge) under 18 U.S.C. § 3582(c)(1)(A)(i) (West 2020) for what is commonly called compassionate release. Hector, age 41, is serving a 20-year sentence for his involvement in a racketeering operation; he bases his motion on his susceptibility to the novel coronavirus due to his obesity and on his post-sentencing rehabilitation. For the following reasons, the court denies Hector's motion for compassionate release.

## Background

This racketeering and drug-trafficking case has a complicated procedural history. Following the sentencing of the six defendants who went to trial during 2012 and 2013, a Supreme Court case, *Alleyne v. United States*, 570 U.S. 99 (2013), was decided and caused the Seventh Circuit to vacate the sentences of three defendants, including Hector. *United States v. Cardena*, 842 F.3d 959, 1000–02 (7th Cir. 2016). While the two other defendants (Tony Sparkman and Jorge Uriarte) were promptly resentenced pursuant to the Seventh Circuit's mandate (the sentence of each was reduced by two years), Hector's resentencing was repeatedly delayed, due to a change of counsel and an interlocutory appeal, and during the delay, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018),

became effective. This court ruled that the First Step Act applied to Hector, given that his initial sentence had been vacated by the Seventh Circuit, a ruling that the court of appeals affirmed in *United States v. Uriarte*, 975 F.3d 596 (7th Cir. 2020) (en banc).

The evidence at trial has been discussed in numerous opinions, such as *Cardena*, 842 F.3d at 971–72, and *United States v. Sparkman*, 973 F.3d 771, 772–73 (7th Cir. 2020). The court, therefore, will not discuss it here, other than to note that Hector was proven to be the top lieutenant of Saul Rodriguez, the mastermind of the extensive criminal operation proved at trial, and received, among other enhancements applied at sentencing, an enhancement for being a manager and organizer of the criminal enterprise. Pre-Sentence Investigation Report ("PSR") ¶¶ 85, 98, 104, 110, 116, 123, 130, 135, 142, ECF No. 940.

On Hector's plenary resentencing pursuant to the First Step Act, however, this court reduced his sentence to the mandatory minimum to which he was at that time subject, 20 years, rather than the 50 years to which he was initially sentenced, the mandatory minimum of 42 years plus an additional 8 years, or the guidelines' recommendation of life imprisonment. The court took into consideration a number of complex factors, including a decrease in Hector's criminal history score due to the intervening invalidation of one of his prior state court convictions; his excellent prison disciplinary record (unexpected due to the evidence at trial); developments following Hector's original sentencing which made the court aware of Saul Rodriguez's manipulation of his codefendants (and the government); the disparities between Hector's sentence and those of his codefendants; and the changes in the law that had occurred since his initial sentencing. *See* Re-Sent. Tr. at 33–46, ECF No. 1844. The court took into consideration, and indeed relied on substantially, the evidence of Hector's conduct since he has been

imprisoned. This evidence persuaded the court that Hector's prognosis for a productive future life was extremely promising. The government appealed the resentencing order. ECF No. 1845.

### Hector's Motion for Compassionate Release

Hector, acting pro se, filed a motion for compassionate release on August 18, 2020, while the appeal of his resentencing was still pending. He is housed at the Bureau of Prisons ("BOP") facility in Greenville, Illinois ("FCI-Greenville"). The government argued that this court lacked jurisdiction to decide the motion, given the pendency of Hector's appeal, and the court denied the motion without prejudice. ECF No. 1927 at 2, 4 (Sept. 9, 2020). When the Seventh Circuit's mandate was finally docketed on November 5, 2020, see ECF Nos. 1964–66, this court was able to reconsider Hector's compassionate release motion. See *Kusay v. United States*, 62 F.3d 192, 194–95 (7th Cir. 1995).

In the interim, Hector filed a motion to reconsider, two addenda, and several letters of support from friends and family. ECF Nos. 1905, 1922, 1932–35, 1937, 1956, 1963. The government filed a supplemental response on October 8, 2020. ECF No. 1948.

### Exhaustion of Administrative Remedies

As amended by the First Step Act, the compassionate release statute allows a court to consider a sentence reduction "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (West 2020).

The government repeatedly asserts that Hector has not exhausted his administrative remedies, *e.g.*, Suppl. Resp. 2, ECF No. 1948, but it has offered no evidence or argument to counter Hector's now uncontested evidence that he sent a prison case manager (as he asserts that

FCI-Greenville's warden had directed inmates to do) a request for compassionate release on July 18, 2020, to which he has received no response. ECF No. 1907 Ex. 4.

This court, consistent with other district courts within this circuit, has held that first, the exhaustion requirement is a non-jurisdictional claims processing rule that can be waived in appropriate circumstances, and second, that failure to exhaust is an affirmative defense, on which the government bears the burden of proof. *United States v. Cardena*, 461 F. Supp. 3d 798, 801-02 (N.D. Ill. 2020). The government has not carried that burden here, given that Hector asserts that he made a request in the manner in which he was instructed to make it, and he has received no response. *See id.*; Mot. Compassionate Release ¶ 5, ECF No. 1907; *See also* ECF No. 1927 at 3 n.4. Since no hearing on Hector's motion has been held (or is reasonably possible), the court notes, but does not rely on, Hector's representation (albeit undisputed on this record) that FCI-Greenville's warden told inmates that all compassionate release requests would be denied. Mot. Compassionate Release ¶ 5.

## Discussion

The compassionate release statute permits the court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The court must make this finding "after considering the [sentencing] factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable." § 3582(c)(1)A). Hector bases his motion on his rehabilitation and his medical conditions, which include obesity and a vitamin D deficiency.

### A. COVID-19 Risk

By their nature, the way in which prisons and jails operate facilitates the rapid spread of diseases like the novel coronavirus. *E.g.*, *Mays v. Dart*, 456 F. Supp. 3d 966, 976–77 (N.D. Ill. Apr. 27, 2020), *aff'd in part, vacated in part, rev'd in part on other grounds*, 974 F.3d 810

(7th Cir. 2020). The government argues that the BOP has implemented a plan intended to minimize the spread of the novel coronavirus through its facilities. Despite the BOP's efforts to contain the coronavirus, Hector advised that on August 24, 2020, 76 inmates at FCI-Greenville had tested positive for the virus. Mot. to Reconsider 3, ECF No. 1937. As of November 6, 2020, FCI-Greenville reported a total of 38 active cases (26 inmates and 12 staff), and a staggering 300 additional inmates and staff (274 inmates and 26 staff) were described as "recovered."[1] Determining exactly what those numbers mean is difficult, as the BOP has provided no interpretive guidance. However, the combined total of active and recovered inmates represents nearly a third of FCI-Greenville's population of 981.[2]

In his most recent addendum, dated October 26, 2020, Hector reports that FCI-Greenville's warden placed the facility on full lockdown, indicating that BOP officials are attempting to contain an outbreak. *See* ECF No. 1963 at 2. The BOP's mitigation program has been in place for months, yet the virus continues to spread at FCI-Greenville. The significant percentage of FCI-Greenville inmates who have contracted the virus at some point indicates that the virus is likely to continue spreading despite the BOP's containment efforts. Accordingly, if he is not released or transferred, Hector has a real chance of contracting the novel coronavirus.

Courts typically rely on guidance published by the Centers for Disease Control ("CDC") when assessing the risks associated with contracting COVID-19; the guidance is not controlling, however. *See United States v. Brooker*, 976 F.3d 228, 231–33 (2d Cir. 2020). As an initial

---

[1] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 10, 2020).

[2] *FCI Greenville*, Federal Bureau of Prisons https://www.bop.gov/locations/institutions/gre/index.jsp (last visited Nov. 6, 2020).

5

matter, Hector is 41 years old, so his age does not by itself put him at high risk for serious COVID-19 complications.[3]

Hector has several diagnosed medical conditions, but, as the government notes, only one, obesity, appears on the CDC list of COVID-19 risk factors. According to the CDC, "[h]aving obesity, defined as a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 or severe obesity (BMI of 40 kg/m2 or above), increases your risk of severe illness from COVID-19."[4] Hector's medical records confirm that he has been diagnosed as obese, but not severely obese, since 2011. His body mass index varies between 35 and 36, putting him in the middle of the range between obesity and severe obesity. *See* ECF No. 1937 Ex. 1 at 1; ECF No. 1954 at 23. Hector does not suggest, however, that his obesity has so far caused other health problems, such as hypertension or a serious heart condition. BOP staff have been effectively managing Hector's other diagnosed conditions, and there is no indication in this record that they appreciably increase his risk for COVID-19 complications.[5] Thus, due to his obesity, Hector faces a moderately increased risk of COVID-19 complications.

---

[3] *See Coronavirus Disease: Older Adults*, Centers for Disease Control and Prevention (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[4] The quotations in this paragraph and the following footnote come from *People with Certain Medical Conditions*, Centers for Disease Control and Prevention https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020; visited Oct. 28, 2020).

[5] The CDC also advises that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." In April 2020, Hector was diagnosed with a vitamin D deficiency due to the BOP's "modified COVID operations." Medical Records 4, ECF No. 1918. While there is some evidence that a Vitamin D deficiency is associated with risks relating to the coronavirus, Hector has been prescribed a supplement to treat the deficiency, and there is no indication that the treatment is inadequate. *See id*. at 1, 4, 28. BOP officials also have assigned Hector to sleep in a lower bunk. ECF No. 1907 Ex. 2; Medical Records 26. The assignment results from complications of head (and hand) injuries, causing twitching, frequent headaches and vertigo; Hector reports that these injuries stemmed from gunshot wounds he suffered in 1994 and 1996. *See* Medical Records 9, 23, 28. Again, nothing in the record suggests the treatment Hector has received is inadequate or that his head and hand injuries increase his COVID-19 risk. *See id.*

### B. Consideration of Sentencing Factors

As the Seventh Circuit recently explained in the context of a different First Step Act provision permitting resentencing, "nothing in the First Step Act precludes a court from looking at [the] § 3553(a) factors anew." *United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020) (citation omitted); *see also United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020). The resentencing court may consider changes in the statutory mandatory minimum and maximum sentence as well as intervening changes to the guidelines; these updates "may reflect updated views about the seriousness of a defendant's offense or criminal history." *Shaw*, 957 F.3d at 742 (citing *United States v. Smith*, 954 F.3d 446, 451 (1st Cir. 2020)). The defendant also "may, . . . present evidence of his post-sentencing conduct in support of a reduced sentence. And a court may look to § 3553(a)'s familiar framework when assessing whether to impose a reduced sentence." *Id.* "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)). It may be considered in combination with other extraordinary and compelling reasons, however. *See id*.

After the Seventh Circuit remanded Hector's case for plenary resentencing, Hector received a substantially reduced sentence of 20 years—30 years below his original sentence, which was itself a departure below the recommended guideline range of life imprisonment. In seeking compassionate release, Hector relies on his post-sentencing rehabilitation and other developments to argue for a further sentence reduction. But this court took all those factors into account in 2019 when it reduced Hector's sentence by 30 years. At that time, to determine the proper sentence, the court weighed the § 3553(a) factors in light of, among other things, Hector's

7

excellent prison disciplinary history, intervening changes in the law, the reduction of his criminal history category, Hector's own statements, his family situation, and letters from members of the community attesting to his post-sentencing rehabilitation. *See* Re-Sent Tr. at 33–46, ECF No. 1844.

The only thing that has materially changed since Hector's resentencing hearing is the outbreak of the COVID-19 pandemic. A diagnosis for a single CDC-recognized COVID-19 risk factor, such as obesity, does not automatically entitle a defendant to a sentence reduction under § 3582(c)(1)(A)(i); each case must be assessed on its facts and in light of the § 3553(a) factors. *See, e.g.*, *United States v. Capo*, 2020 WL 5994500, at *4 (N.D. Ill. Oct. 9, 2020) (denying motion for compassionate release after balancing the § 3553(a) factors in light of the defendant's obesity); *United States v. Rogers*, 2020 WL 4816053, at *2–3 (N.D. Ill. Aug. 18, 2020) (same).

Hector has served only about half of his much-reduced sentence (approximately 11 of 20 years). This court weighed all the positive evidence provided by Hector (discussed above), including the substantial evidence of his rehabilitation (as well as the BOP's designation of Hector as a low security inmate), and drastically reduced his sentence. But the defendant's rehabilitation and prospects for living a law-abiding life are not the only factors the court has a responsibility to consider. Among other things, the sentence must also reflect the nature and seriousness of the offense, promote respect for the law, and reflect the need to deter the defendant and others from similar conduct in the future. *See* 18 U.S.C. § 3553(a). Hector served as Saul Rodriguez's top lieutenant for approximately eight years. He recruited several members of the Rodriguez enterprise, including his brother and co-defendant Jorge Uriarte (who is serving a 40-year sentence, his resentencing having occurred before the effective date of the First Step Act) and co-defendant Tony Sparkman. Hector was proven to have helped to plan and execute

numerous brutal kidnappings and one attempted murder. PSR ¶¶ 30–56. The victims of these crimes were often, but not always, involved in criminal activity themselves; among the victims were innocent children of the victims. *See* PSR ¶¶ 45–46, 135 (describing the kidnapping, at gunpoint, of Pedro Avila, his pregnant wife, and their five children ages ranging from 6–13); Trial TR. at 3842:11–3847:19, ECF No. 1242 (Avila's trial testimony). Hector was responsible for obtaining and providing firearms for Rodriguez's "crew" on at least one occasion. PSR ¶ 41.

The court views as highly significant the evidence of Hector's rehabilitation, including his recognition of his family's need for his presence and his desire to make a positive contribution to his community. But the brutality proved at trial, in which Hector was a key participant, cannot be ignored. A compassionate release motion based on COVID-19 risks is a blunt instrument. It would require the court to terminate Hector's imprisonment after just 11 years. Considering, as it must, the evidence against Hector proved at trial, Hector's moderate COVID-19 risk caused by his obesity cannot justify a further sentence reduction.

## Conclusion

For the reasons stated, Hector Uriarte's motion for compassionate release, as supplemented, is denied.


Date: November 18, 2020            /s/
                                                      Joan B. Gottschall
                                                      United States District Judge